Steven F. Werth (CA Bar No. 205434)
*steven.werth@gmlaw.com*
**GREENSPOON MARDER LLP**
1875 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 213.617.5210
Facsimile: 954.771.9264

Counsel for Howard M. Ehrenberg,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>626 HOSPICE, INC.,<br><br>Debtor.<br><br>HOWARD M. EHRENBERG, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>RAUL PEREZ, an individual,<br><br>Defendant. | Case No. 2:22-bk-12904-SK<br><br>Chapter 7<br><br>Adversary No.:<br><br>**COMPLAINT TO AVOID AND RECOVER AVOIDABLE TRANSFERS**<br><br>Place:  255 E. Temple Street<br>Courtroom 1575<br>Los Angeles, CA 90012<br>Hon. Sandra R. Klein |

Plaintiff Howard M. Ehrenberg, solely in his capacity as chapter 7 trustee ("Trustee") of the bankruptcy estate of 626 Hospice, Inc. ("Debtor") brings this adversary proceeding against Mr. Raul Perez, an individual ("Defendant"), and alleges as follows:

## INTRODUCTION

1.  This suit seeks the avoidance and recovery of numerous transfers made by the Debtor to Defendant in the four-year period prior to May 25, 2022 (the "Petition Date"), the date the Debtor commenced the above-captioned bankruptcy case.

SFW 57569954v1

2.  The transfers at issue total $27,614.50, and are referred to below as the "Four-Year Transfers". The Four-Year Transfers consist of a numerous checks written from Account 4716, identified below.

3.  The Debtor, operated by Natasha Gill, Gladwin Gill ("Mr. Gill"), and Amelou Gill, made the Four-Year Transfers for the purpose of hindering, delaying, and defrauding the Debtor's creditors. Those creditors included the U.S. Department of Health and Human Services ("HHS") which is owed $2.2 million relating to Medicare overpayments made as early as 2018, and the IRS which is owed $207,000 relating to unpaid taxes from 2020.

4.  The Trustee requests that this Court grant relief that will return the Four-Year Transfers to the Debtor's estate ("Estate"). The Trustee seeks avoidance and recovery of the Four-Year Transfers under 11 U.S.C. §§ 544 and 550, and California Civil Code § ("CC") 3439.04 et seq.

## JURISDICTION AND VENUE

5.  This is an adversary proceeding, pursuant to Federal Rule of Bankruptcy Procedure, which relates to the Chapter 7 proceeding captioned In re 626 Hospice, Inc., Case No. 2:22-bk-12904-SK (Bankr. C.D. Cal., Los Angeles Division).

6.  This Court has subject matter jurisdiction over this action pursuant to section 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a), in that this adversary proceeding arises in, arises under, and/or relates to Debtor's chapter 7 case.

7.  This adversary proceeding is a core proceeding under section 157(b)(2) of Title 28 of the United States Code, such that this Court has jurisdiction to hear and determine this proceeding and to enter an appropriate order and judgment. The Trustee consents to entry of a final order or judgment by this Court.

8.  This Court is the proper venue for this adversary proceeding pursuant to 28 U.S.C. § 1409(a) because the Debtor's chapter 7 case is pending in this judicial district.

2

**PARTIES**

9. The Trustee is the duly appointed, authorized, and acting chapter 7 trustee for the Estate.

10. The Debtor commenced a voluntary bankruptcy case under Chapter 11 of the United States Code (the "Bankruptcy Code") on May 25, 2022. Subsequently, the Court converted this case to one under Chapter 7 of the Bankruptcy Code.

11. The Trustee was appointed as chapter 7 trustee of the Estate on August 12, 2022, and he has served in that capacity since.

12. Defendant is an individual who resides in the County of Los Angeles, California. At all relevant times, Defendant has done business with Estefania Salazar as "Buena Vida Marketing".

**GENERAL ALLEGATIONS**

**I.    Debtor's Operations**

13. The Debtor was formed on May 16, 2011.

14. At the time of its formation, Mr. Arthur Mkrtchyan ("Mr. Mkrtchyan") possessed a 100% equity interest in the Debtor.

15. On October 28, 2014, the Debtor entered into a provider agreement with the Secretary of the HHS (the "Provider Agreement"). The Provider Agreement allowed the Debtor to provide health care services to Medicare beneficiaries under Medicare provider number 75-1645.

16. The Provider Agreement allowed the Debtor to provide specific types of covered hospice care (routine home care; continuous home care; inpatient respite care) to patients and then submit an invoice for those services to the HHS for reimbursement. Reimbursement then occurred through an administrative contractor for the HHS, which in the instance of the Debtor was National Government Services.

17. Hospice billing and reimbursement is governed by 42 U.S.C. §§ 1395 and certain Code of Federal Regulations sections ("CFR"). Under those regulations, a hospice provider provides covered services and, from time to time, submits invoices to HHS for

3

reimbursement. HHS pays those invoices as they are submitted, but all HHS payments are subject to a year-end review to determine whether the payments have exceeded a cap established in the CFR. CFR 418.308(a). After a billing year ends, a hospice provider submits a "Cap Determination Notice" to the administrative contractor, who then determines whether the hospice has been over or under-reimbursed. CFR 418.308(c). If the administrator determines the provider was over-reimbursed, it will notify the hospice provider that the excess reimbursement must be refunded.

18. Some time prior to May 21, 2018, American Academy Of Palliative Care Services, Inc., a California corporation ("American Academy"), a company controlled and managed by Mr. Gill, entered into a purchase agreement with Mr. Mkrtchyan to acquire Mr. Mkrtchyan's 100% equity interest in the Debtor (the "Purchase Agreement").

19. On May 20, 2018, Mr. Gill, in his capacity as manager of American Academy, and Mr. George Christie entered into a Memorandum of Understanding ("MOU") pursuant to which Mr. Christie agreed to contribute $300,000 for the purpose of purchasing the shares of the Debtor, and in return would receive a 50% interest in the Debtor. In the MOU, Mr. Gill agreed to contribute his full time, efforts, and 20 years of experience in the hospice industry towards the operation of the Debtor.

20. On June 6, 2018, the Debtor filed a Statement of Information with the California Secretary of State. That statement identified Natasha Gill as the Debtor's Secretary and CFO, and identified Ms. Yeota Christie, the daughter of Mr. George Christie, as the Debtor's CEO and Director.

21. At all times after American Academy acquired Mr. Mkrtchyan's interest in the Debtor, Mr. Gill exercised control over the Debtor either directly, through American Academy, or through his family members Amelou Gill and Natasha Gill.

22. The Debtor's primary bank account was with Citibank, and had the last four digits 4716 ("Account 4716"). The Debtor also had a bank account at JP Morgan Chase Bank which did not have material activity during the Four-Year Period.

23. During the time that Ms. Yeota Christie and members of the Gill family

4

operated the Debtor, the Debtor utilized Account 4716 as its primary business account.

24. On June, 22, 2018, Mr. Gill formed California Hospice Management Group, Ltd., a California corporation ("California Hospice").

25. On October 19, 2018, California Hospice filed a Statement of Information with the California Secretary of State which identified Mr. Gill as California Hospice's CEO, CFO, and Secretary.

26. On April 25, 2019, Mr. Gill opened a business checking account for California Hospice at Bank of America, with the last four digits 1578 ("Account 1578").

27. The name of the owner of Account 1578, as identified on the signature card for that account, was "CALIFORNIA HOSPICE MANAGEMENT GROUP, LTD DBA 626 HOSPICE".

28. On May 7, 2019, Mr. Gill opened a business checking account for California Hospice at Bank of America, with the last four digits 3756 ("Account 3756").

29. The name of the owner of Account 3756, as identified on the signature card for that account, was "CALIFORNIA HOSPICE MANAGEMENT GROUP, LTD DBA NEXGEN STEM CELL THERAPY".

30. On March 13, 2020, Natasha Gill signed a business signature card relating to Account 1578, in which she identified herself as California Hospice's Vice President.

**II.    The Diverted Transfers**

31. From April 25, 2019, through November 30, 2020, the Debtor received 40 checks from various entities, the aggregate value of which was $420,878.09, which Mr. Gill and Natasha Gill deposited into Account 1578 (the "Account 1578 Deposits").

32. Each of the checks comprising the Account 1578 Deposits was made out to "626 Hospice, Inc." or "626 Hospice Inc."

33. The Account 1578 Deposits consist of the following checks:

| Check Date | Issuer | Amount |
|---|---|---|
| 4/2/19 | HPN – Regal Medical Group – Claims | $234.05 |

| | | | |
|---|---|---|---|
| 1 | 4/9/19 | L.A. Care Health Plan | $6,954.77 |
| 2 | 4/24/19 | L.A. Care Health Plan | $30,061.63 |
| 3 | 4/30/19 | HPN – Regal Medical Group – Claims | $5,851.25 |
| 4 | 5/16/19 | California Hospital Medical Center – Los Angeles | $5,149.76 |
| 5 | 5/21/19 | L.A. Care Health Plan | $16,552.80 |
| 6 | 5/23/19 | CALMEDHCLA | $11,100.02 |
| 7 | 5/31/19 | HPN – Regal Medical Group – Claims | $3,750.00 |
| 8 | 6/18/19 | Blue Shield California - Promise Health Plan | $3,042.65 |
| 9 | 6/26/19 | L.A. Care Health Plan | $22,806.08 |
| 10 | 7/2/19 | HPN – Regal Medical Group – Claims | $5,701.52 |
| 11 | 7/19/19 | CALMEDHCLA | $5,701.52 |
| 12 | 7/22/19 | L.A. Care Health Plan | $29,091.90 |
| 13 | 8/21/19 | L.A. Care Health Plan | $23,207.12 |
| 14 | 8/27/19 | L.A. Care Health Plan | $5,701.52 |
| 15 | 9/23/19 | CALMEDHCLA | $5,701.52 |
| 16 | 9/23/19 | L.A. Care Health Plan | $28,507.33 |
| 17 | 10/1/19 | HPN – Regal Medical Group – Claims | $7,750.00 |
| 18 | 10/4/19 | State of California – Bank & Corp Tax Refund | $831.00 |
| 19 | 10/21/19 | L.A. Care Health Plan | $22,070.40 |
| 20 | 10/22/19 | L.A. Care Health Plan | $5,517.60 |
| 21 | 10/29/19 | HPN – Regal Medical Group – Claims | $3,750.00 |
| 22 | 10/29/19 | HPN – Regal Medical Group – Claims (not a duplicate of above) | $3,750.00 |
| 23 | 10/29/19 | CALMEDHCLA | $5,517.60 |
| 24 | 11/21/19 | CALMEDHCLA | $5,701.52 |
| 25 | 11/21/19 | L.A. Care Health Plan | $28,507.60 |
| 26 | 11/22/19 | Southern California Healthcare System, Inc. dba | $6,704.12 |

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

| Date | Payor | Amount |
|---|---|---|
| | Southern California Hospital at Culver City | |
| 11/26/19 | HPN – Regal Medical Group – Claims | $7,750.00 |
| 12/23/19 | L.A. Care Health Plan | $28,389.75 |
| 12/24/19 | CALMEDHCLA | $5,517.60 |
| 12/24/19 | CALMEDHCLA (not a duplicate of above) | $5,517.60 |
| 12/27/19 | HPN – Regal Medical Group – Claims | $6,300.45 |
| 12/30/19 | Southern California Healthcare System, Inc. dba Southern California Hospital at Culver City | $5,517.60 |
| 1/21/20 | CALMEDHCLA | $5,785.53 |
| 1/22/20 | L.A. Care Health Plan | $30,462.46 |
| 1/24/20 | Southern California Healthcare System, Inc. dba Southern California Hospital at Culver City | $5,785.53 |
| 1/28/20 | HPN – Regal Medical Group – Claims | $7,250.00 |
| 2/21/20 | Southern California Healthcare System, Inc. dba Southern California Hospital at Culver City | $5,701.52 |
| 2/24/20 | L.A. Care Health Plan | $29,026.67 |
| 3/3/20 | HPN – Regal Medical Group – Claims | $7,750.00 |
| **TOTAL** | | **$420,878.09** |

34. From March 20, 2020, through October 12, 2022, the Debtor received 74 checks from various entities, the aggregate value of which was $760,357.28, which Mr. Gill and Natasha Gill deposited into Account 3756 (the "Account 3756 Deposits").

35. Of the Account 3756 Deposits, the Debtor received four after the Petition Date. Mr. Gill and Natasha Gill deposited those four checks, which should have been deposited into the Debtor's Debtor-in-Possession operating account, into Account 3756.

36. The Account 3756 deposits consist of the following checks, all of which were made out to "626 Hospice, Inc., "626 Hospice Inc.," or "626 Hospice".

7

| Check Date | Issuer | Amount |
| --- | --- | --- |
| 3/6/20 | Blue Shield California - Promise Health Plan | $4.479.12 |
| 3/23/20 | L.A. Care Health Plan | $27,061.35 |
| 3/27/20 | HPN – Regal Medical Group – Claims | $7.250.00 |
| 4/3/20 | Blue Shield California - Promise Health Plan | $7,320.34 |
| 4/22/20 | L.A. Care Health Plan | $28,927.65 |
| 4/28/20 | HPN – Regal Medical Group – Claims | $7.750.00 |
| 5/6/20 | Blue Shield California - Promise Health Plan | $5,846.45 |
| 5/13/20 | L.A. Care Health Plan | $22,395.60 |
| 5/21/20 | L.A. Care Health Plan | $5,598.90 |
| 5/29/20 | HPN – Regal Medical Group – Claims | $7,500.00 |
| 6/5/20 | Blue Shield California - Promise Health Plan | $5,785.53 |
| 6/8/20 | L.A. Care Health Plan | $28,927.65 |
| 6/26/20 | HPN – Regal Medical Group – Claims | $7,750.00 |
| 7/7/20 | Blue Shield California - Promise Health Plan | $8,668.72 |
| 7/7/20 | L.A. Care Health Plan | $5.598.90 |
| 7/8/20 | L.A. Care Health Plan | $22,395.60 |
| 7/16/20 | 626 Hospice, Inc. (from Account 4716 - memo line states "EXP Account") | $11,000.00 |
| 7/28/20 | HPN – Regal Medical Group – Claims | $7,500.00 |
| 8/5/20 | Anthem | $76.24 |
| 8/7/20 | Blue Shield California - Promise Health Plan | $13,105.87 |
| 8/20/20 | L.A. Care Health Plan | $5,785.53 |
| 8/31/20 | L.A. Care Health Plan | $23,142.12 |
| 9/1/20 | HPN – Regal Medical Group – Claims | $7,750.00 |
| 9/4/20 | Blue Shield California - Promise Health Plan | $6,577.69 |

| # | Date | Payee | Amount |
|---|------|-------|--------|
| 1 | 9/11/20 | Blue Shield California - Promise Health Plan | $5,785.53 |
| 2 | 9/22/20 | L.A. Care Health Plan | $5,785.53 |
| 3 | 9/23/20 | L.A. Care Health Plan | $23,192.12 |
| 4 | 9/29/20 | HPN – Regal Medical Group – Claims | $3,250.00 |
| 5 | 10/2/20 | Westguard Insurance Company | $1,213.18 |
| 6 | 9/21/20 | Centene Management Company LLC | $20.61 |
| 7 | 10/6/20 | Blue Shield California - Promise Health Plan | $11,197.80 |
| 8 | 10/21/20 | L.A. Care Health Plan | $27,994.50 |
| 9 | 10/30/20 | HPN – Regal Medical Group – Claims | $3,750.00 |
| 10 | 11/27/20 | L.A. Care Health Plan | $28,977.65 |
| 11 | 12/2/20 | HealthNet | $2,125.26 |
| 12 | 12/4/20 | HPN – Regal Medical Group – Claims | $3,875.00 |
| 13 | 12/4/20 | Blue Shield California - Promise Health Plan | $5,598.90 |
| 14 | 12/8/20 | Blue Shield California - Promise Health Plan | $5,598.90 |
| 15 | 12/10/20 | Westguard Insurance Policy | $68.00 |
| 16 | 12/23/20 | HealthNet | $7,084.20 |
| 17 | 12/29/20 | HPN – Regal Medical Group – Claims | $3,750.00 |
| 18 | 12/31/20 | L.A. Care Health Plan | $11,197.80 |
| 19 | 1/1/21 | L.A. Care Health Plan | $16,796.70 |
| 20 | 1/8/21 | Blue Shield California - Promise Health Plan | $5,785.53 |
| 21 | 1/20/21 | HealthNet | $6,825.24 |
| 22 | 1/29/21 | L.A. Care Health Plan | $5,785.53 |
| 23 | 2/2/21 | L.A. Care Health Plan | $23,142.12 |
| 24 | 2/2/21 | HPN – Regal Medical Group – Claims | $3,875.00 |
| 25 | 2/5/21 | Blue Shield California - Promise Health Plan | $5,785.53 |
| 26 | 2/10/21 | HealthNet | $5,785.53 |
| 27 | 3/5/21 | L.A. Care Health Plan | $5,785.53 |

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

| | | | |
|---|---|---|---|
| 1 | 3/10/21 | HealthNet | $5,225.64 |
| 2 | 3/30/21 | Blue Shield California - Promise Health Plan | $5,225.64 |
| 3 | 3/30/21 | L.A. Care Health Plan | $31,353.84 |
| 4 | 4/2/21 | L.A. Care Health Plan | $1,195.60 |
| 5 | 4/5/21 | L.A. Care Health Plan | $1,356.64 |
| 6 | 4/28/21 | HealthNet | $5,936.81 |
| 7 | 5/11/21 | L.A. Care Health Plan | $26,811.40 |
| 8 | 5/21/21 | Blue Shield California - Promise Health Plan | $5,936.81 |
| 9 | 5/26/21 | HealthNet | $5,795.30 |
| 10 | 6/2/21 | Gardena Hospital LP | $150.00 |
| 11 | 6/9/21 | L.A. Care Health Plan | $23,081.20 |
| 12 | 6/11/21 | Blue Shield California - Promise Health Plan | $5,936.81 |
| 13 | 6/23/21 | HealthNet | $5,936.81 |
| 14 | 7/5/21 | L.A. Care Health Plan | $23,747.24 |
| 15 | 7/9/21 | Blue Shield California - Promise Health Plan | $5,745.30 |
| 16 | 7/27/21 | HPN – Regal Medical Group – Claims | $35,185.59 |
| 17 | 7/29/21 | L.A. Care Health Plan | $17,285.90 |
| 18 | 8/26/21 | L.A. Care Health Plan | $11,873.62 |
| 19 | 12/21/21 | L.A. Care Health Plan | $5,745.30 |
| 20 | | **BANKRUPTCY PETITION FILED MAY 25, 2022** | |
| 21 | 7/25/22 | L.A. Care Health Plan | $5,992.61 |
| 22 | 7/27/22 | health net | $5,799.30 |
| 23 | 8/24/22 | health net | $5,605.99 |
| 24 | 10/12/22 | health net | $11,208.98 |
| | **TOTAL** | | **$760,357.28** |

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

10

37. The total of the Account 1578 Deposits and the Account 3756 Deposits is $1,181,235.37 (the "Diverted Transfers"). This includes a $11,000 check written by the Debtor on July 16, 2020, from Account 4716, made out to "626 Hospice, Inc.," which Mr. Gill and Natasha Gill deposited into Account 3756—a transfer which is both (i) a check to the Debtor that should have been deposited in Account 4716, and (ii) a transfer from Account 4716 to Account 3756.

38. Mr. Gill and Natasha Gill prevented the Debtor from receiving $1,181,235.37 which belonged to it, and of that amount, diverted $28,606 out of the post-petition Debtor's estate. Mr. Gill and Natasha Gill did this during a time that the Debtor owed HHS on excess reimbursements the Debtor had already received, and would have to return as soon as HHS determined the precise overpayment amount.

39. National Government Services sent its first overpayment notice to the Debtor on April 5, 2019, stating that the Debtor had received a Medicare overpayment of $149,100.09, which covered the year ending September 30, 2018. The Debtor did not appeal this overpayment determination. This notice caused Mr. Gill and Natasha Gill to begin making the Diverted Transfers.

40. National Government Services sent a second overpayment notice to the Debtor on June 5, 2020, stating that the Debtor had received a Medicare overpayment of $565,818.82, which covered the year ending September 30, 2019. The Debtor did not appeal this overpayment determination.

41. National Government Services sent a third overpayment notice to the Debtor on December 3, 2020, stating the Debtor had received a Medicare overpayment of $31,562.18, which related to the year ending September 30, 2018. A fourth notice of overpayment followed on March 30, 2021 ($575,233), with another on August 6, 2021 ($43,312.66), October 29, 2021 ($55,566.68), April 5, 2022 ($522,177.07), and a final one on June 7, 2022 ($858,644.93), which covered the year prior to September 30, 2021.

42. The Debtor repaid only a fraction of the above-identified amounts owed to HHS.

11

43. HHS filed a proof of claim in the Debtor's case, stating that as of the Petition Date, the Debtor owed it in excess of $2.2 million.

44. The Debtor also failed to file tax returns for 2020, 2021, and 2022. The IRS filed a proof of claim in the Debtor's bankruptcy case, stating that it is owed at least $230,000 based on estimated taxes owing during the 2020, 2021, and 2022 tax year.

45. At the time Mr. Gill and Natasha Gill made the Diverted Transfers, the Debtor was also making improper kickback payments to persons who had referred patients to the Debtor which then allowed the Debtor to submit invoices to Medicare for reimbursement. For these kickback payments, the Debtor utilized Account 1578 and Account 3756.

46. One of the persons to whom Mr. Gill and Natasha Gill made transfers to during the Four-Year Period was Mr. John Kosolcharoen. Mr. Kosolcharoen received $26,300 of the Diverted Transfers during the Four-Year Period, via transfers out of Account 3756. The Debtor also wrote a check in the amount of $100,000 from Account 3756 to Mr. Kosolcharoen's dba "Infinity Marketing". On May 8, 2023, Mr. Kosolcharoen pled guilty in his criminal case before the U.S. District Court for the Central District of California, Case No. SA CR 16-0094-ODW, to referring compounded medications for pharmacies in exchange for kickbacks.

47. During the time that Mr. Gill and Natasha Gill made the Diverted Transfers, they transferred large amounts from Account 4716 to themselves and companies they controlled. Mr. Gill received a total of $628,974 during the Four-Year Period. Natasha Gill received $166,677 directly from Account 4716. Amelou Gill, the wife of Mr. Gill and mother of Natasha Gill, received $417,380 either directly or through her company Palliative Care Strategic Services.

**III.    The Transfers To Defendant**

48. During the Four-Year Period, Mr. Gill and Natasha Gill transferred $27,614.50 to Defendant by way of checks from Account 4716. The checks had the following dates, and were made out to Defendant in the following amounts:

12

| Date | Amount |
|---|---|
| 2/28/19 | $1,000 |
| 3/28/19 | $3,825 |
| 8/21/19 | $3,400 |
| 8/30/19 | $1,600 |
| 9/23/19 | $2,408 |
| 9/25/19 | $2,125 |
| 10/22/19 | $5,312 |
| 11/22/19 | $2,944.50 |
| 12/22/19 | $5,000 |
| **TOTAL** | $27,614.50 |

49. The Trustee has conducted an investigation and has found no evidence that at the time the Four-Year Transfers were made, either the Debtor owed any financial obligations to Defendant.

50. During the Four-Year Period, Mr. Gill and Natasha Gill exploited the U.S. Government program for reimbursement for hospice services by taking advantage of the delay between the Debtor's receipt of excess Medicare reimbursements, and the HHS determination that the Debtor had overcharged Medicare. Mr. Gill and Natasha Gill knew that the Debtor could not generate revenue sufficient to pay these bills back - $2.2 million as of the Petition Date to HHS alone—and within one year of acquiring the Debtor began diverting company funds into California Hospice's bank accounts. Mr. Gill and Natasha Gill used the Diverted Transfers to pay personal expenses, as well as non-Debtor expenses such as Mr. Gill's loan repayment owed to Mr. Christie, and the stock purchase price Mr. Gill owed to Mr. Mkrtchyan. Mr. Gill also withdrew cash directly from Accounts 1578 and 3756 on nine separate occasions between November 7, 2019, and August 2, 2021, in the aggregate amount of $325,500.

51. By the time the Debtor commenced its bankruptcy case on May 25, 2022, its

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

sole asset scheduled consisted of office equipment. Natasha Gill did not schedule the $28,606.88 receivable that the Debtor was owed by LA Health Care Plan and health net, and when those four checks came in, she deposited that amount into Account 3756 without informing the Court or the Trustee.

### IV. Badges Of Fraud Related To The Four-Year Transfers

52. Multiple badges of fraud are present with respect to the Four-Year Transfers, including the following:

- The Four-Year Transfers did not pay any known obligation of the Debtor;
- Mr. Gill, in opening numerous bank accounts in the name of California Hospice, diverting $1.1 million of the Debtor's funds into those accounts, and then transferring funds from California Hospice to third parties, attempted to conceal transfers made by the Debtor for his benefit during the Four-Year Period;
- The Four-Year Transfers were made while Mr. Gill was being prosecuted for tax fraud to which he ultimately pled guilty and entered Federal custody in March, 2023;
- The Four-Year Transfers were made at a time that Mr. Gill and Natasha Gill were making kickback payments to various third parties who had referred patients to the Debtor so that the Debtor could request reimbursement from Medicare, including to convicted felon John Kosolcharoen;
- Defendant did not provide value to the Debtor in exchange for the Four-Year Transfers;
- The Debtor made false statements, concealed facts, and operated under false pretenses while making the Four-Year Transfers, and concealed from this Court and the Trustee four post-petition checks that should have been deposited into the Debtor's bank account;
- Mr. Gill's and Natasha Gill's fraud caused the Debtor to incur significant

liabilities to HHS and the IRS, far in excess of the Debtor's ability to repay those liabilities, making the Debtor insolvent during the Four-Year Period; and

- The Debtor was aware of the debts it owed to HHS and the IRS, and continued to divert receivables that should have been deposited into the Debtor's account to Account 1578 and Account 3756, instead of using those monies to pay the Debtor's debts.

## FIRST CLAIM FOR RELIEF

**(Avoidance Of Four-Year Transfers As Intentionally Fraudulent Transfers Pursuant To 11 U.S.C. § 544(b) And CC 3439.04(a)(1) and 3439.07)**

53. The Trustee realleges and incorporates herein by reference each and every allegation contained in the previous paragraphs as though set forth in full.

54. The Four-Year Transfers were made with the actual intent to hinder, delay, and/or defraud Debtor's creditors.

55. At all relevant times, the Four-Year Transfers were voidable under CC 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against the Debtor that were and are allowable against the Estate under 11 U.S.C. § 502. These creditors include those creditors who are listed in the Debtor's schedules as holding undisputed claims or who have filed proofs of claim against the Estate.

56. The Trustee is entitled to an order and judgment under 11 U.S.C. § 544(b) that the Four-Year Transfers that occurred prior to the Petition Date are avoided.

## SECOND CLAIM FOR RELIEF

**(Avoidance Of Four-Year Transfers As Constructively Fraudulent Transfers Pursuant To 11 U.S.C. § 544(b) And CC 3439.04(a)(2), 3439.05, and 3439.07)**

57. The Trustee realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as though set forth in full.

58. At the time of the Four-Year Transfers, the Debtor: (i) was engaged in a business for which the remaining assets of the Debtor were unreasonably small in relation

to the business; (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due; or (iii) the Debtor was insolvent.

59. The Trustee is entitled to an order and judgment under 11 U.S.C. § 544(b) that the Four-Year Transfers that occurred prior to the Petition Date are avoided.

### THIRD CLAIM FOR RELIEF

(Recovery Of Transfers Or The Value Thereof Pursuant To 11 U.S.C. § 550)

60. The Trustee realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs as though set forth in full.

61. To the extent that Defendant is not the initial transferee of the Four-Year Transfers, Defendant is the immediate or mediate transferee of the initial transferee of such transfers.

62. The Four-Year Transfers are recoverable from Defendant as the immediate or mediate transferee of the Four-Year Transfers that the Debtor made with the actual intent to hinder, delay, or defraud its creditors.

63. To the extent the Four-Year Transfers are avoided, the Trustee may recover, for the benefit of the Estate, the Four-Year Transfers, or, if the Court so orders, the value of the Four-Year Transfers.

**FOR THESE REASONS**, the Trustee prays for judgment against Defendant as follows:

**ON THE FIRST CLAIM FOR RELIEF**

1. For a judgment that the Four-Year Transfers are avoided under § 544(b) and and/or providing any other remedy available under applicable law;

**ON THE SECOND CLAIM FOR RELIEF**

2. For a judgment that the Four-Year Transfers are avoided under § 544(b) and and/or providing any other remedy available under applicable law;

**ON THE THIRD CLAIM FOR RELIEF**

3. To the extent any of the Four-Year Transfers are avoided, for a judgment that

the Trustee may recover, for the benefit of the Estate, such transfer, or, if the Court so orders, the value of such transfer, under 11 U.S.C. § 550(a) against Defendant in the amount identified in paragraph 2 of this Complaint; and

**ON ALL CLAIMS FOR RELIEF**

4. For interest as permitted by law from the date of the Four-Year Transfers.

Dated: May 15, 2024          **GREENSPOON MARDER LLP**

By: _____
Steven F. Werth
Attorneys for Howard M. Ehrenberg, Chapter 7 Trustee

17

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFF**<br>HOWARD M. EHRENBERG, Chapter 7 Trustee | **DEFENDANT**<br>RAUL PEREZ, an individual |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Steven F. Werth (CA Bar No. 205434)<br>**GREENSPOON MARDER LLP**<br>1875 Century Park East, Suite 1900<br>Los Angeles, CA 90067<br>Telephone: (213) 617-5210 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☒ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee |
| **CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)<br>Avoidance and recovery of fraudulent transfers under 11 U.S.C. §§ 544 and 550, and California Civil Code § 3439.04. | |

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001( 1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
1 - ☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property – other

**FRBP 7001 (2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001( 3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4 ) – Objection/ Revocation of Discharge**
☐ 41-Objection/re vocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66 -Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 -Dischargeability- §523(a)(5 ), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65 -Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71 -Injunctive relief- imposition of stay
☐ 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81 -Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91 -Declaratory judgment

**FRBP 70 01(10) Deter mi nation of Remove d Act ion**
☐ 01 -Determination of removed claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | ☒ Demand $27,614.50 |
| Other Relief Sought | |

SFW 57569962v1

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>626 HOSPICE, INC. | BANKRUPTCY CASE NO.<br>2:22-bk-12904-SK | | |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE<br>Hon. Sandra R. Klein | |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE | |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*[signature]* | | | |
| DATE<br>May 15, 2024 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Steven F. Werth | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.